## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| ALVIN VAZQUEZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:12-cv-00139-TWP-DML |
| ELI LILLY AND COMPANY, | ) ) ) |
| Defendant. | ) |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Eli Lilly and Company's ("Lilly") Motion for Summary Judgment (Dkt. 36). Plaintiff Alvin Vazquez ("Mr. Vazquez") filed this action against Lilly alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), alleging that Lilly discriminated and retaliated against him on the basis of national origin. Mr. Vazquez also alleges that he was discriminated and retaliated against on the basis of his age.[1] For the reasons set forth below, Lilly's motion is **GRANTED.**

### I. BACKGROUND

The following material facts are not in dispute and are viewed in the light most favorable to Mr. Vazquez as the non-moving party. *See Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 728 (7th Cir. 2011). Mr. Vazquez is a Hispanic male who is originally from Puerto Rico. He was 54 years old at the time of his termination from Lilly. Mr. Vazquez began working for Lilly in 1978 at its location in Puerto Rico, and was transferred to Lilly's location in Indianapolis, Indiana in

---

[1] Although not specifically stated in Mr. Vazquez's Complaint, this claim presumably falls under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). The Court finds that Mr. Vazquez's Complaint meets the notice pleading standards required under Federal Rule of Civil Procedure 8(a), as it sets forth the events leading to his termination, the relevant dates, and his age at the time of the termination. The Complaint sufficiently provides Lilly with fair notice of Mr. Vazquez's age claims and the grounds upon which they rest. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

1992. Around 1999, Lilly assigned Mr. Vazquez to the position of Engineering Technician[2] in the Indianapolis Dry Packaging facility. From 2000 to 2007, he was assigned the responsibility of overseeing two packing lines in his department, a responsibility normally assigned to the higher paying position of Process Engineer. Mr. Vazquez was the only Engineering Technician responsible for overseeing two packaging lines; however, he was never promoted to the Process Engineer position.

Every year from 1978 through 2005, Mr. Vazquez received an annual merit pay increase and bonus pay. In 2005, Mr. Vazquez was rated as "needs improvement" in six out of seven behaviors and "successful" in one behavior, by supervisor, Rigo Irizarry. In February 2006, Michael Schrope ("Mr. Schrope") became Mr. Vazquez's supervisor. In 2006 and 2007, Mr. Vazquez received an overall "successful" rating on his performance review; however, because he was already above the 75th percentile for his salary range, he did not receive a merit increase. Employees above the 75th percentile needed to receive a rating of "exemplary" in order to receive a pay increase. In January 2007, Mr. Vazquez sent an e-mail to Mr. Schrope and the human resources department contesting the 2006 evaluation, but did not make specific allegations of discrimination.

In early 2008, Mr. Vazquez began to hear rumors that Lilly was planning a Reduction in Force ("RIF") due to an incoming line from Puerto Rico that would be merged into the Indianapolis site. In his December 2008 performance review, Mr. Vazquez received a rating of "unsatisfactory," again making him ineligible for a pay increase. In early 2009, Mr. Vazquez made a formal complaint with Human Resources Consultant Michael Lakin ("Mr. Lakin"), alleging that he was being discriminated against and harassed by Mr. Schrope, including being repeatedly told he was a poor performer, unfairly criticized for using vacation time, and that he

---

[2] Mr. Vazquez refers to this position as "Engineering Specialist."

generally felt like he was being treated differently from the other engineers and being "set up to fail" through changing and unrealistic expectations and excessive scrutiny by Mr. Schrope. Dkt. 47-7. Mr. Vazquez also reported that prior to his 2008 evaluation, Mr. Schrope told him that he was at risk for being relocated in the impending RIF due to his performance ratings. *Id.* Mr. Vazquez also told Mr. Lakin that he did not know whether Mr. Shrobe did not like him because he was ethnically Latino, because he was in his mid-50s or because he had not finished his engineering degree. Mr. Lakin performed an investigation, but no further action was taken.

In September 2009, Lilly officially announced the RIF plan, which included elimination of two of the eight Engineering Technician positions within the Indianapolis Dry Manufacturing site by June 2010. The selection criteria was based on a calculation called the HR Index that factored in employees' tenure and annual performance ratings for the most recent three years. The employees were then ranked based upon their respective index scores and the lowest ranked individuals would have to find new positions within the company or face termination. Although Mr. Vazquez received the maximum possible credit based upon his tenure of more than 25 years, his performance scores for 2007, 2008 and 2009 resulted in an HR Index that was the lowest in his job classification, causing his position to be selected for elimination in the RIF. After learning he had been selected for reallocation, Mr. Vazquez applied for an Engineering Technician position in the Devices Business Unit ("Devices Engineering Technician"), but was not selected due in part to his "unsatisfactory" performance rating in 2008. Because Mr. Vazquez was unable to find another position within Lilly, he was terminated on November 1, 2010. Additional facts will be addressed below as necessary.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat the motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties … nor the existence of some metaphysical doubt as to the material facts … is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

**A.  Evidentiary Matters**

As a preliminary matter, in its Reply (Dkt. 48), Lilly asks the Court to strike or disregard portions of Mr. Vazquez's evidence pursuant Rule 56(e) of the Federal Rules of Civil Procedure. Lilly argues that much of Mr. Vazquez's, Vicente Diaz's, and Christopher Graham's affidavits

are inadmissible because much of the "evidence" consists of legal conclusions, conclusory statements unsupported by specific facts, irrelevant opinions, inadmissible hearsay, and testimony not based upon personal knowledge. The Court has reviewed the objectionable paragraphs from the affidavits and finds that much of it does consist of inadmissible evidence. Compliance with Rule 56(e) is mandatory. *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998). Therefore, the Court cannot consider those alleged facts which are conclusory statements not supported by specific facts, legal conclusions, and testimony not based on personal knowledge.

**B.     Title VII claims**

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from acting in retaliation against employees who lawfully seek to or actually do participate in the process of investigating or pursuing a Title VII discrimination claim. 42 U.S.C. §2000e-3(a). In a Title VII discrimination suit, a plaintiff may show discrimination in one of two ways: either (1) through the "direct" method, or (2) by relying on the "indirect," burden shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 681 (7th Cir. 2007). Under the indirect method of proof, a plaintiff must first establish a *prima facie* case of discrimination by demonstrating that "(1) he is a member of a protected class, (2) he met his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside of the protected class received more favorable treatment." *Everroad v. Scott Truck Sys., Inc.,* 604 F.3d 471, 479 (7th Cir.2010).

Under the direct method of proof, a plaintiff may rely on either "direct evidence that acknowledges discriminatory animus on the part of the employer or circumstantial evidence which establishes discriminatory motive through a longer chain of inferences." *Grigsby v. LaHood,* 628 F.3d 354, 358 (7th Cir.2010). Direct evidence "usually requires an admission from the decision maker about his discriminatory animus, which is rare indeed." *Nagle v. Vill. of Calumet Park,* 554 F.3d 1106, 1114 (7th Cir.2009). Circumstantial evidence of discriminatory intent, which would support a claim for national origin discrimination includes evidence such as:

> …[s]uspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, evidence ... that similarly situated employees outside the protected class received systematically better treatment, [and] evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

See *Naficy v Illinois Dept. of Human Services*, 808 F.Supp.2d 1052 (2011).

Mr. Vazquez does not make it clear whether he is proceeding under the direct or indirect method, and primarily makes factual analyses as opposed to making legal analyses under either framework. Mr. Vazquez does not present his claim using the factors under the indirect method nor does he present any evidence of direct evidence of admissions by Lilly decision makers that acknowledge discriminatory animus.[3] Thus, the Court will look at his claims from the "convincing mosaic" approach of the direct method.

Additionally, Mr. Vazquez's arguments frequently address allegations of discrimination based upon race; however, he has only brought claims for national origin discrimination in his Equal Employment Opportunity Commission ("EEOC") complaint and the Complaint filed in

---

[3] In an attempt to raise a question of fact as to whether Mr. Schrope harbored discriminatory animus toward minorities in general, Mr. Vazquez offers the affidavits of Vicente Diaz and Chris Graham which allege that Mr. Schrope disproportionately criticized and negatively evaluated Hispanic and Black employees as compared to White employees. Dkts. 47-2; 57-1. However, the evidence in these affidavits is for the most part conclusory and therefore inadmissible.

this Court. "In the federal courts, there is uncertainty about what constitutes race versus national origin discrimination under Title VII." *Salas v Wisconsin Dept. of Corrections,* 493 F.3d 913, at 923 (7th Cir. 2007). Courts have focused on whether the plaintiff might have put the EEOC on notice of a race discrimination claim because his charge used a term that might connote both race and national origin, such as the term "Hispanic." *See Torres v. City of Chicago,* No. 99 C 6622, 2000 WL 549588, at *2 (N.D.Ill. May 1, 2000) (race discrimination claim was related to EEOC charge alleging discrimination based on plaintiff's Hispanic ancestry because the term "Hispanic" encompasses the concepts of race and national origin) (citing *Alonzo v. Chase Manhattan Bank, N.A.,* 25 F.Supp.2d 455, 459 (S.D.N.Y.1998)). In both his EEOC claim and in his Complaint, Mr. Vazquez has used the term Hispanic, which may encompass both race and national origin. However, because proceeding on a theory of race discrimination would not alter the outcome of the Court's analysis in this case, the Court will focus on admissible evidence relating to discrimination based only upon Mr. Vazquez's national origin.

      **1.**      **Discrimination**

As evidence of discrimination, Mr. Vazquez argues that he was evaluated more harshly due to Mr. Schrope's bias against minorities, and that this was done for the purpose of ensuring that Mr. Vazquez would be selected for termination or reallocation during the RIF. He also argues that the negative evaluations caused him not to be selected for the Devices Engineering Technician position, ultimately resulting in his termination because he could not find another position within the company. However, much of Mr. Vazquez's "evidence" is based on his own speculation about the reasons behind the treatment he received from Mr. Schrope, and he has not presented sufficient evidence that this treatment was based upon his national origin. Mr.

7

Vazquez has not presented sufficient circumstantial evidence that could lead a reasonable jury to find an inference of unlawful discrimination.

As stated earlier, the Seventh Circuit recognizes three categories of circumstantial evidence available to a plaintiff using the "convincing mosaic" approach, including 1) "suspicious timing, ambiguous statements oral or written, . . . and other bits and pieces from which an inference of [discriminatory] intent might be drawn;" 2) evidence that "similarly situated employees were treated differently;" and 3) evidence that the employer offered a pretextual reason for an adverse employment action. *Coleman*, 667 F.3d at 860 (quoting *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011)). "Each type of evidence is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together." *Id.* Mr. Vazquez is not required to present all of these types of evidence to defeat summary judgment, but he is still required to present sufficient evidence that "'points directly' to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (quoting *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 n.3 (7th Cir. 2006)).

Additionally, Lilly argues that Mr. Vazquez's claims fail as a matter of law because he fails to identify any similarly situated employee who was treated more favorably, and he cannot show that Lilly's proffered reason for his termination was pretext. However, under the direct method an employee is not required to show that a similarly situated employee was treated more favorably, *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529-30 (7th Cir. 2008), nor is he required to satisfy any of the other elements under the *McDonnell Douglas* burden shifting method. Nevertheless, Mr. Vazquez still must present some evidence that links Mr. Schrope's actions to his national origin, which he fails to do.

In support of his claim of national origin discrimination, Mr. Vazquez asserts only that he began to receive negative performance evaluations once Mr. Schrope became his supervisor. However, it is well established that negative performance evaluations alone do not constitute adverse employment actions. *See Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003); *Bowers v. Radiological Soc. of N. Am., Inc.*, 57 F. Supp. 2d 594, 598-99 (N.D. Ill. 1999). In addition, Mr. Vazquez admitted that he did not know how Mr. Schrope evaluated other employees under his supervision, only that he disagreed with Mr. Schrope's evaluations of his performance. Dkt. 36-1 at 42, Vazquez Dep. 86:12-21. Simply arguing that a performance evaluation is not accurate is insufficient to show discrimination, because "the question is not whether the employer's reasons for a decision are *right* but whether the employer's description of its reasons is *honest*." *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (citing *Gustovich v. AT&T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992)) (emphasis in original).

Mr. Vazquez attempted to present evidence that his evaluations were improper because he was assigned the duties and evaluated under the standards of a higher job classification than the one he held. Here, much of Mr. Vazquez's argument is premised on the fact that he was assigned the duties of a Process Engineer, but was paid less and never promoted to the higher position, unlike white employees who were promoted once they began to assume similar duties. Dkt. 46 at 25. He argues that these individuals were "similarly situated" but he argues that they were treated better because they were promoted to the position of Process Engineer, not because they were not terminated. However, as pointed out by Lilly, Mr. Vazquez has not asserted a disparate pay or failure to promote claim, thus comparison to these individuals is irrelevant to the issue of whether Mr. Vazquez was terminated due to his national origin.

Finally, Mr. Schrope's addition of the requirement that employees in his department be able to speak, read and write English fluently is not evidence of animus based upon Mr. Vazquez's national origin. Language is not a protected class under Title VII, nor are language and national origin interchangeable. *Reyes v. Pharma Chemie, Inc.*, 890 F. Supp. 2d 1147, 1158 (D. Neb. 2012). While the use of language as a covert basis for national origin discrimination is prohibited by Title VII, Mr. Vazquez has failed to present evidence that the requirement that employees be able to read, write and speak English fluently had any actual effect on him, aside from his speculation that Mr. Schrope meant to target and humiliate him as the only bilingual employee in the department. *See id.*

Considering his many years of service to Lilly, the facts presented by Mr. Vazquez may be evidence of unfair treatment; however, they do not create an inference of discrimination based on national origin. Because Mr. Vazquez has failed to present sufficient evidence for a reasonable jury to find an inference of national origin discrimination, Lilly's motion for summary judgment on Mr. Vazquez's discrimination claim under Title VII must be **GRANTED**.

## 2. Retaliation

In order to prove retaliation under the direct method, the plaintiff must present evidence of (1) a statutorily protected activity; (2) an adverse employment action taken by the employer; and (3) a causal connection between the two.[4] *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Mr. Vazquez asserts that he engaged in a statutorily protected activity in January 2009 when he complained to Mr. Lakin about alleged discrimination by Mr. Schrope based on his age and race. Dkt. 47-7. He also alleges that he made complaints in 2007 and 2008; however, these complaints do not state that he believed he was being discriminated

---

[4] Again, Mr. Vazquez does not make it clear whether he is proceeding under the direct or indirect method of proof, so the Court will view his primarily factual arguments under the direct method.

against based upon his membership in a protected class.  Dkts. 47-8, 47-19.  Thus, Mr. Vazquez's protected activity consists solely of the January 2009 complaint to Mr. Lakin.[5]

Mr. Vazquez must be able to show that there is a causal connection between his protected activity in January 2009 and a subsequent adverse employment action.  Mr. Vazquez argues that following his complaint of discrimination, Mr. Schrope "continued to perpetrate a hostile environment and discriminatory acts against [Mr. Vazquez]" through performance evaluations, dismissive behavior, and "constant harassment."  Dkt. 46 at 32.  He also claims Mr. Schrope retaliated against him by creating a job description requiring applicants to speak, write and read English.  Mr. Vazquez does not provide any factual support for these conclusory allegations in his brief, and none of these actions amount to an adverse employment action.  Even the "most blatant act" alleged by Mr. Vazquez is one that is contemplated and permitted by the Title VII regulations. English-only language requirements are permitted where there is a business necessity for such a rule, but Mr. Vazquez does not allege that he was prohibited from speaking Spanish, nor does this constitute an adverse employment action.  *See* 20 C.F.R. § 1606.7. Because Mr. Vazquez cannot show that he suffered an adverse employment action as a result of is 2009 complaint, his *prima facie* case of retaliation fails.  The Court finds that Mr. Vazquez has failed to present sufficient questions of fact in support of his retaliation claim, and therefore summary judgment is **GRANTED**.

C.     **ADEA Claims**

---

[5] Mr. Vazquez also cites to his 2010 EEOC complaint as a protected activity, but this occurred subsequent to his termination and thus cannot form a basis for retaliation.

A plaintiff may use the same methods of proof under the ADEA as he can under Title VII to prove discrimination. *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060-61 (7th Cir. 2003). However, Mr. Vazquez does not present any arguments or evidence in support of his ADEA claim in his briefs. The only evidence he presented related to his ADEA claims is that he meets the age requirement for protection under the ADEA, but the majority of his arguments and evidence relate to his national origin claims under Title VII with only passing references to his age claim. In fact, the only reference he makes to his age is in the context of his belief that he was not promoted to the position of Process Engineer because of his age, and failure to promote was not part of his ADEA claim. Dkt. 46 at 24. The Court agrees with Lilly that Mr. Vazquez has abandoned his age discrimination claims and, therefore, summary judgment on Mr. Vazquez's claims under the ADEA is **GRANTED**. *See Johnson v. Cambridge Inds., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.") (additional citations omitted).

## IV.   CONCLUSION

Mr. Vazquez has not presented sufficient questions of fact on his Title VII and ADEA discrimination and retaliation claims. For the forgoing reasons, Lilly's Motion for Summary Judgment (Dkt. 36) is **GRANTED**, and Mr. Vazquez's claims are **DISMISSED**.

**SO ORDERED.**

Date: 09/24/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kimberly J. Bacon
BACON & LANE, LLC
suite800law@att.net

Norman Lamont Reed
THE LAW OFFICE OF KIMBERLY J. BACON
reedsmithlaw@aol.com

Ellen E. Boshkoff
FAEGRE BAKER DANIELS LLP - Indianapolis
ellen.boshkoff@faegrebd.com

Rozlyn M. Fulgoni-Britton
FAEGRE BAKER DANIELS LLP - Indianapolis
rozlyn.fulgoni-britton@faegrebd.com

Susan W. Kline
FAEGRE BAKER DANIELS LLP - Indianapolis
swkline@faegrebd.com